**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHARLES SINGLETARY, | |
| Plaintiff, | |
| v. | Civil No. 09-752 (CKK) |
| DISTRICT OF COLUMBIA, | |
| Defendant. | |

**MEMORANDUM OPINION**
(February 18, 2010)

Plaintiff, Charles Singletary, filed the above-captioned matter against Defendant, District of Columbia (the "District" or "D.C."), pursuant to 42 U.S.C. § 1983 ("Section 1983"). Singletary alleges that the District of Columbia Board of Parole (the "Board") wrongly revoked his parole based on insufficient hearsay evidence in violation of his Fifth Amendment due process rights and seeks to hold the District liable under Section 1983.  Presently pending before the Court is the District's [6] Motion to Dismiss.  In addition, the District has filed a [12] Motion for Leave to File a Response to Plaintiffs' Surreply.  Both motions are now fully briefed and ripe for the Court's resolution.  Upon thorough consideration of the District's pending motions and the parties' related briefing, the applicable case law and statutory authority, and the record of this case as a whole, the Court shall GRANT the District's [12] Motion for Leave to File a Response to Plaintiffs' Surreply, but shall DENY the District's [6] Motion to Dismiss, for the reasons that follow.

# I. BACKGROUND

*A.     Factual Background*

### 1.     Singletary's Arrest and Subsequent Revocation of Parole

In 1990, after having served more than seven years on a sentence for robbery, armed robbery and assault, Singletary was released on parole.  Complaint, Docket No. [1], ¶ 8.[1] Approximately five years later, in June of 1995, Singletary was arrested for the murder of Leroy Houtman, *a.k.a.*, Vaughn Stokes.  *Id.* ¶ 10.  Singletary alleges that he was not involved with or responsible for the murder.  *Id.* ¶ 11.  The case against him was ultimately dismissed at a preliminary hearing before the District of Columbia Superior Court, and the charges against Singletary were never brought before a grand jury.  *Id.* ¶ 10.

In July of 1996, a little over a year after he had been arrested for Houtman's murder, the Board held a joint hearing to consider whether to revoke Singletary's parole and that of Gary Barnes, Singletary's alleged accomplice in the Houtman murder, based upon their alleged involvement in that crime.  *Id.* ¶ 12.  At the hearing, Singletary denied any involvement with or responsibility for the murder.  *Id.* ¶ 13.  The only evidence presented against him was (1) a narrative given by the prosecutor and (2) testimony by a police detective.  *Id.* ¶ 15.  Neither the prosecutor or the police detective who testified had first-hand knowledge of the facts.  *Id.* Rather, most of the information described by the prosecutor and the police detective was based

---

[1] In setting forth the relevant background, and in considering the District's Motion to Dismiss, the Court has considered, as it must, only the "facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record."  *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *see also Marshall Co. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n. 6 (D.C. Cir. 1993).

upon statements made by two individuals not present at the hearing; although these individuals were not identified by name at the hearing, they were later identified as Verdez Smith and Terri Washington. *Id.* ¶ 16.

Smith and Washington both claimed to have learned about Houtman's murder from another individual – Carmelita Metts. *Id.* ¶ 17. Both Smith and Washington, however, had given the police inconsistent and conflicting statements. *Id.* ¶ 18. For example, Smith was originally identified by the police when Houtman's truck was discovered in his possession after the murder. *Id.* Smith initially claimed that someone named "Tony" had given it to him, but later admitted to having received the truck from Metts. *Id.* The police subsequently arrested Smith for Houtman's murder, at which point Smith again changed his story, claiming that Metts, his former girlfriend, had asked him to help her kill Houtman, but that he had refused. *Id.* Smith also told the police that Metts had later given him Houtman's truck to sell, as Smith had previous experience as a car thief. *Id.* Similarly, Washington initially denied any knowledge of the murder, but later claimed that Metts had confessed to her that she had helped Singletary and Barnes murder Houtman. *Id.* ¶ 18.

As indicated above, neither Smith or Washington testified at the parole revocation hearing nor were they identified at the hearing as the source of the statements against Singletary. *Id.* ¶¶ 20-21. Indeed, no one with first-hand knowledge of the murder testified at the hearing. *Id.* ¶ 14. According to the Complaint, the testimony provided at the hearing summarizing Smith and Washington's testimony misstated some of the alleged details provided in their statements to the police. *Id.* ¶ 22. In addition, many details about Singletary's alleged involvement in the murder were never explained, including why he would participate in the murder and whether he even

3

knew Houtman. *Id.* Nonetheless, on August 6, 1996, the Board revoked Singletary's parole based on the evidence provided at the July hearing and Singletary was re-incarcerated, spending the next ten years in prison. *Id.* ¶ 23-24.

        2.      <u>Post-Revocation Legal Proceedings</u>

Singletary filed for a writ of habeas corpus in the District of Columbia Superior Court in 1997, challenging the Board's decision to revoke his parole. *Id.* ¶ 35. That petition was denied by the Superior Court, which denial was affirmed on appeal by the District of Columbia Court of Appeals. *Id.* In 2000, Singletary again sought habeas relief before the District of Columbia Superior Court, but his request was again denied and the decision was again affirmed on appeal by the District of Columbia Court of Appeals. *Id.* ¶ 36.

Singletary then petitioned for a writ of habeas corpus before the United States District Court for the District of Columbia in a civil action captioned *Singletary v. D.C. Board of Parole*, No. 00-1263. *Id.* ¶ 37. The District Court denied his petition. *Id.* Singletary appealed to the United States Court of Appeals for the District of Columbia Circuit (the "D.C. Circuit") in an appeal captioned *Singletary v. Reilly*, No. 04-713. *Id.* ¶ 38. On July 7, 2006, the D.C. Circuit reversed the District Court's denial, concluding that Singletary was entitled to a new parole revocation hearing. *Id.* ¶ 39-40; *see also Singletary v. Reilly*, 452 F.3d 868 (D.C. Cir. 2006). The D.C. Circuit found "that the hearsay presented at the hearing was not demonstrated to be reliable and that the Board's decision to revoke Singletary's parole was therefore 'totally lacking in evidentiary support'" in violation of his due process rights. *Singletary*, 452 F.3d at 874.

        3.      <u>Singletary's New Parole Revocation Hearing</u>

Singletary's new parole revocation hearing was held on October 30, 2006. Compl. ¶ 42.

The hearing was held before the United States Parole Commission, to which the functions of the

District of Columbia Parole Board had been previously transferred. *Id.* ¶ 43.[2]  At that hearing,

the government presented testimony from Smith and Detective Tom Amis. *Id.* ¶ 44.  Smith

testified that shortly after Houtman's murder, a person named "Charlie" was pointed out to him

as having participated in the crime. *Id.*  When asked whether that individual identified as

"Charlie" was then-present in the hearing room, however, Smith did not identify Singletary as

that individual. *Id.*

The hearing officer concluded that there was insufficient evidence to permit a finding of a

parole violation, concluding that "[t]he testimony provided by Detective Amis and Mr. Smith at

today's hearing would indicate that Mr. Singletary was never identified as Charlie.  It should also

be noted that the information supported in the file would indicate that there is no direct link from

Mr. Singletary to the victim." *Id.* ¶ 45.  Based on the hearing officer's report and

recommendation, the Parole Commission determined that there was no finding of a violation and

reinstated Singletary to supervised release. *Id.* ¶ 47.  The Parole Commission's order was issued

on or about November 17, 2006, and Plaintiff was released shortly thereafter. *Id.* ¶ 48.

B.    *Procedural Background*

Singletary filed the above-captioned lawsuit against the District on April 23, 2009.  *See*

*generally id.*  Singletary seeks to hold D.C. liable under 42 U.S.C. § 1983 "for having revoked

---

[2] Effective August 5, 1998, the United States Parole Commission assumed exclusive
authority over parole determinations of District of Columbia prisoners convicted of felonies, and
the District of Columbia Board of Parole was subsequently abolished, pursuant to the terms of
the National Capital Revitalization and Self-Government Improvement Act of 1997, 128 Pub. L.
No. 105-33, 111 Stat. 712 (1997).  *See* D.C. Code § 24-131.

his parole and imprisoning him for ten years based on unreliable multiple hearsay in violation of [his] Fifth Amendment right to due process." *Id.* ¶ 1.  The District subsequently filed the now-pending Motion to Dismiss.  *See* Def.'s MTD, Docket No. [6].  Singletary timely filed an Opposition, *see* Pl.'s Opp'n, Docket No. [7], and the District its Reply, *see* Def.'s Reply, Docket No. [9].  After the motion was fully briefed, Singletary filed an unopposed motion for leave to file a surreply to address arguments raised for the first time by the District in its Reply, which the Court granted; accordingly, the Court considers the arguments raised in Singletary's Surreply as well.  *See* Pl.'s Surreply, Docket No. [11].

Shortly thereafter, the District filed a motion for leave to file a response to Singletary's Surreply, with its proposed Response to Plaintiff's Surreply ("Response") attached.  *See* Def.'s Mot. for Leave, Docket No. [12].  The District contends that Singletary's Surreply addresses not only those arguments that the District admittedly raised for the first time in its Reply, but also revisits arguments that Singletary had previously had an opportunity to address in his Opposition; the District contends that, as the moving party, it is entitled to a final opportunity to respond to Singletary's arguments.  *See id.*  In response to the District's motion for leave to file, Singletary filed an opposition in which he initially asserts that the District "has not shown good cause for filing a response to plaintiff Singletary's surreply memorandum," such that the motion should "ordinarily" be denied.  Pl.'s Resp. to Def.'s Mot. for Leave, Docket No. [13], at 1.  He goes on, however, to indicate that he does not ultimately oppose the District's request in this instance, "given that the District's latest arguments could be raised later in any event, and that they are easily refuted," such that "it would make sense for the Court to dispose of them now."  *Id.*  As such, Singletary indicates that he will "use [his] response [to Plaintiff's motion for leave] as an

6

opportunity to respond on the merits." *Id.*  Singletary's response is thus aimed primarily at providing a substantive response to the District's arguments as set forth in its Response rather than opposing the District's request for leave to file.  *See id.*  The District has since filed a reply in support of its motion for leave to file a Response, in which it addresses both its request for leave to file as well as the merits of the arguments raised by Singletary in his briefing.  *See* Def.'s Reply in support of Mot. for Leave, Docket No. [15].

The Court notes that the parties are ill advised to use their briefing regarding the District's motion for leave as a vehicle to provide the Court with substantive arguments regarding the merits of the pending dispositive motion.  Doing so violates the spirit, if not the letter, of the local rules of this Court, which expressly limit the parties' filings with respect to the District's Motion to Dismiss (both in terms of the number and page length of permissible filings), absent leave of the Court.  *See generally* LCvR 7.  It also unnecessarily risks confusing the record in this case.  Nonetheless, because the Court finds that the District's arguments, as set forth in its Response, do not — even if considered — support dismissal of Singletary's Complaint at this time and because Singletary has not, in fact, objected to the filing of the District's Response, the Court concludes that there is no prejudice to the parties if the Court permits consideration of the District's attached Response.  Accordingly, the Court shall exercise its discretion and GRANT the District's [12] Motion for Leave to File a Response to Plaintiff's Surreply.  The Court therefore considers the arguments set forth in the District's Response as well.  Briefing on the District's Motion to Dismiss is now complete, and the issues raised therein are ripe for the Court's review.

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); accord *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Id.* at 1964-65; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Instead, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations.  *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F.Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged.").  However, as the Supreme Court recently made clear, a plaintiff must provide more than just "a sheer possibility that a defendant has acted unlawfully."  *Iqbal*,

8

129 S.Ct. at 1950.  Where the well-pleaded facts set forth in the complaint do not permit a court,

drawing on its judicial experience and common sense, to infer more than the "mere possibility of

misconduct," the complaint has not shown that the pleader is entitled to relief.  *Id.* at 1950.

### III.  DISCUSSION

Counsel for the District has unnecessarily complicated resolution of the pending Motion

to Dismiss by repeatedly shifting the District's positions and refining its arguments with each

successive filing, thereby presenting both this Court and Plaintiff with a series of moving targets.

Indeed, the exact contours of the District's key arguments in support of its motion are not made

fully clear until its final Response to Singletary's Surreply.  The shifting nature of the District's

briefing appears largely the result of counsel's efforts to adapt and correct the District's

arguments — many of which are premised on an incorrect understanding of both the relevant

facts and case law — once such errors are pointed out by Singletary in his responsive briefing.

For example, the District first argues in its opening memorandum that Singletary's

Complaint must be dismissed because he has failed to state a predicate constitutional claim for

due process violations under the Fifth Amendment,[3] as is necessary to succeed on his Section

1983 claim.  Def.'s MTD at 6-9.  Specifically, the District urges that Singletary's claim fails

because he has no direct constitutional liberty interest in parole and because the mere fact that the

Board "violated its own procedures in revoking plaintiff's parole," as the District alleges the D.C.

Circuit held in ordering a new parole revocation hearing, "does not give rise to a constitutional

due process violation."  *Id.* at 6-9.  The District's argument on this point is without merit for two

---

[3] While due process violations are typically analyzed under the Fourteenth Amendment,
the District of Columbia – which is not a state – is subject to the Due Process Clause of the Fifth
Amendment.  *See Butera v. District of Columbia*, 235 F.3d 637, 645 n. 7 (D.C. Cir. 1987).

key reasons.  First, while a convicted individual may have "no constitutional or inherent right . . .

to be conditionally released before the expiration of a valid sentence," *Greenholtz v. Inmates of*

*Nebraska Penal Correctional Complex*, 442 U.S. 1, 7 (1979), an individual who has already been

released on parole does, by contrast, have a "valuable" liberty interest in remaining on parole that

"must be seen as within the protection of the Fourteenth Amendment," *Morissey v. Brewer*, 408

U.S. 471, 482 (1972).  As the Supreme Court has made clear, "[t]here is a crucial distinction

between being deprived of a liberty one has, as in parole, and being denied a conditional liberty

that one desires."  *Greenholtz*, 442 U.S. at 9.  Accordingly, while a prisoner may not have a

constitutional due process right to be paroled in the first instance, once that individual has in fact

been released on parole, he or she has a liberty interest in remaining on parole and a parole

revocation determination must therefore meet certain due process standards.  *Id.*  Second, the

D.C. Circuit's decision ordering a new parole revocation hearing in Singletary's case was not

based on a finding "the D.C. Parole Board violated its own procedures," as the District now

urges.  Indeed, the D.C. Circuit did not mention, let alone base its decision on, the Board's

internal procedures.  *See generally Singletary*, 452 F.3d 868.  Instead, as review of the D.C.

Circuit's decision confirms, the court found "that the hearsay presented at the hearing was not

demonstrated to be reliable and that the Board's decision to revoke Singletary's parole was

therefore 'totally lacking in evidentiary support'" in violation of his due process rights.

*Singletary*, 452 F.3d at 874.  The District, in apparent recognition that its arguments on this point

are without merit, prudently chose not to renew any objections to Singletary's underlying due

process claim in its subsequent briefing.  *See generally* Def.'s Reply; Def's Response to Pl.'s

Surreply.

Perhaps looking to fill the void created by its decision to abandon any challenge to the sufficiency of Singletary's underlying due process claim, the District advanced a new argument for the first time in its reply briefing, arguing that it cannot be held liable under Section 1983 because it is "shielded from liability for the Parole Board's decision by the doctrine of quasi-judicial immunity." Def.'s Reply at 2. Specifically, the District contends that the individual Board members are immune from suit for their decision to revoke Singletary's parole and that the District is therefore also immune from suit. *See id.* at 3 ("Because there can be no liability against the members of the D.C. Parole Board for a decision revoking parole under the doctrine of quasi-judicial immunity, there can also be no liability against the Board itself, and consequently no liability against the District, for the Board's decision."). However, as Singletary points out in his Surreply, *see* Pl.'s Surreply at 1-5, the Supreme Court has made "it quite clear that, unlike various government officials, municipalities do not enjoy immunity from suit – either absolute or qualified – under § 1983." *Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993) (citing *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691 (1978) and *Owen v. City of Independence*, 445 U.S. 622, 650 (1980)); *see also Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C. Cir. 1987) ("For the purposes of affixing liability on a municipality, it is irrelevant that the decisionmaker enjoys personal immunity for the behavior under attack."), *abrogated in part on other grounds by Hartman v. Moore,* 547 U.S. 250 (2006); *Lederman v. United States*, Civ. Act. No. 99-3359, 2007 WL 1114137, *4 (D.D.C. Apr. 3, 2007) (rejecting District's argument that "the same prosecutorial immunity . . . that protects prosecutors from individual liability extends to immunize the District" as "directly contraven[ing] the express rule that a municipal corporation

11

does not, by extension, enjoy the benefit of the personal immunities defenses of its officials and employees"). Confronted with case law confirming that the District, unlike the individual Board members, does not enjoy the benefits of immunity from suit under Section 1983, the District wisely declined to renew any such argument in its Response. *See generally* Def.'s Resp. to Pl.'s Surreply.

Setting aside, then, those arguments that the District itself appears to concede are without merit, the District's principal remaining argument in favor of dismissal is its contention that Singletary has not sufficiently alleged a basis for municipal liability under Section 1983. Pursuant to 42 U.S.C. § 1983, "[a]ny person who, under color of any law, statute, ordinance, regulation, custom, or usage of any State, shall subject or cause to be subjected, any person to the deprivation of any rights, privileges or immunities secured by the Constitution of the United states, shall . . . be liable to the party injured . . . ."[4] In *Monell*, the Supreme Court concluded that this language evidenced a congressional intent to permit municipal liability under specific circumstances. 436 U.S. at 690-91; *see also Pembaur v. Cincinnati*, 475 U.S. 469, 477-78 (1986). However, "a municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. As such, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government entity is

---

[4] The District is treated as a municipality for purposes of 42 U.S.C. § 1983. *Bridges v. Kelly*, 977 F. Supp. 503, 506 n. 4 (D.D.C. 2003) (citing *Dorman v. D.C.*, 888 F.2d 159, 162 (D.C. Cir. 1989)).

responsible under § 1983." *Id.* at 694.

"The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479 (emphasis in original). "There are a number of ways in which a "policy" can be set by a municipality to cause it to be liable under § 1983." *Baker v. D.C.*, 326 F.3d 1302, 1306 (D.C. Cir. 2003). For example, a plaintiff may prove municipality liability based on: (a) "the explicit setting of a policy by the government that violates the Constitution;" (b) "the action of a policy maker within the government;" (c) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom;'" or (d) "the failure of the government to respond to a need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations." *Id.* (internal citations omitted).

The District initially argued in its opening memorandum that Singletary's Section 1983 claim must fail because he has not alleged any "supporting facts that evince a District policy, practice or custom of revoking parole 'based on unreliable multiple hearsay' and/or in violation of constitutional due process rights, or that such a policy was communicated to the Board." Def.'s MTD at 11. But, as Singletary emphasizes in his opposition briefing, this argument is based on a misunderstanding of the allegations in Singletary's Complaint. Singletary has not alleged that there was some generally applicable District policy or practice to revoke parole based on unreliable evidence; rather, Singletary alleges that at the time the Board revoked his parole, it "was the District of Columbia's final decisionmaker with respect to parole revocation." Compl.

13

¶ 57.  Accordingly, Singletary seeks to prove municipal liability in this case by demonstrating that the decision to revoke his parole was made by the "final municipal decisionmaker and [is] therefore properly attributable to the municipality."  *Bd. of the Co. Commissioners of Bryan Co. v. Brown*, 520 U.S. 397, 407 (1997).  This is a distinct and independent means of proving municipal liability and does not require Singletary to allege the existence of an explicit policy or practice by the District.  *See Baker*, 326 F.3d at 1306.  As the Supreme Court has recognized,

> a government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations.  If that decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood.  More importantly, where the action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is taken only once or to be taken repeatedly.

*Pembaur*, 475 U.S. at 481.  Significantly, the District does **not** dispute that the Board was the final policymaker regarding parole revocation nor does it challenge the sufficiency of Singletary's allegation on that point.  *See generally* Def.'s MTD; Def.'s Reply; Def.'s Response to Pl.'s Surreply.  The District's assertion that Singletary has failed to allege sufficient facts to prove that it set an explicit policy or adopted a particular custom therefore misses the mark.

For that same reason, the District's argument that Singletary's Section 1983 claim must fail because he has not alleged deliberate indifference and/or conduct that shocks the conscience is equally without merit.  Def.'s Reply at 6-7.  Singletary does not allege in this case that the District failed "to respond to a need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations."  *Baker,* 326 F.3d at 1306 (internal citations omitted).  Accordingly, he need not allege or show the existence of deliberate indifference by the District; rather, his allegations that

14

the "action taken or directed by the municipality or its authorized decisionmaker itself violates federal law" is sufficient to demonstrate that "the municipal action was the moving force behind the injury of which the plaintiff complains." *Brown*, 520 U.S. at 404; *cf. City of Canton v. Harris*, 489 U.S. 378, 388 (1989) ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.").[5]

Alerted to the fact that Singletary alleges municipal liability in this case based upon the alleged action of the city's final policymakers and not upon the existence of a custom or policy, the District finally, for the first time in its Reply, begins to focus on the actual issues in this case. Its arguments, however, continue to be based upon a fundamental misunderstanding of the relevant case law. Citing to a series of inapposite cases involving the decisions of lower-level government officials lacking final policymaking authority, the District urges that it cannot be held liable for the single decision of the Board because the action "did not constitute District policy, practice or procedure." Def.'s Reply at 4-5 (citing cases). It appears that the District is

_____

[5] For that same reason, the District's reliance on *Palmquist v. Village of Bensenville*, 111 F.3d 1332 (7th Cir. 1997), is misplaced, as that decision involves a claim of excessive police force and in which the plaintiff sought to establish municipality based upon a failure to train theory. *Id.* at 1343-47. Similarly, the District's assertion that Singletary must allege and show that his due process rights were "clearly established" at the time of the Board's decision to revoke his parole is incorrect. Def.'s Reply at 6-7; Def.'s Resp. to Pl.'s Surreply at 6-7. As support for this argument, the District cites to *Butera v. D.C.*, 235 F.3d 637, 646-47 (D.C. Cir. 2001). Review of that case confirms that this question is relevant only to determining the availability of a qualified immunity defense. *See id.* ("Qualified immunity . . . generally shields State officials from liability for their discretionary functions 'insofar as their conduct does not violate *clearly established statutory or constitutional rights* of which a reasonable person would have known.'") (emphasis added) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As qualified immunity is not at issue in this case, the District's argument on this point is irrelevant.

under the mistaken impression that Singletary must prove not only that a decision was made by officials responsible for establishing final policy with respect to the subject matter in question, but that the decision established a "policy," as that term is colloquially used and understood. *See id.* at 3-5. As explained above, however, a municipality may be held liable for the actions of a final policymaker even if the "course of action [is] tailored to a particular situation and not intended to control decisions in later situations . . . where the action is directed by those who establish governmental policy." *Pembaur*, 475 U.S. at 481.[6]

The District's final argument in favor of dismissal is equally flawed. Specifically, the District urges that it may not be held liable for the Board's decision "because a single evidentiary decision of a judicial nature does not constitute a policy of the District pursuant to § 1983." Def.'s Resp. to Pl.'s Surreply at 2-3. As an initial matter, the Court notes that the District raised this argument for the first time in its final Response to Plaintiff's Surreply. Although the Court has granted the District leave to file its proposed Response, for the reasons set forth above, the decision whether to consider the arguments set forth therein is a separate question. As a general

---

[6] In support of its position that the Board's decisions regarding the revocation of parole cannot constitute "policy" sufficient to establish municipal liability, the District also argues in its Reply that the "decisions of the D.C. Parole Board on whether to grant or revoke parole, and hearings regarding decisions, can be made by the Board, a member of the Board or an examiner." Def.'s Reply at 4. The District concludes that "[i]t is difficult to argue that a single decision to revoke an individual's parole could constitute the policy of the Board and the District, when the entire D.C. Parole Board was not required to be involved in such a decision." *Id.* As Singletary points out in his Surreply, however, the District's claims on this point are inaccurate. *See* Pl.'s Surreply at 5-6. The Board's rules in effect at the time make clear that while a revocation hearing may be conducted by a member of the Board or an examiner, "that member or examiner shall submit proposed findings, conclusions, and recommendation in writing to the Board. Only the Board may thereafter terminate parole or modify the terms and conditions of parole." 28 D.C.M.R. § 219.4 (attached as Exhibit A to Def.'s Reply). The District does not renew this argument in its Response.

rule, courts should decline to consider arguments raised for the first time in reply.  *See Juergens v. Urban Title Servs.*, 652 F. Supp. 2d 40, 50 n. 8 (D.D.C. 2009) (declining to consider arguments raised for the first time in reply).  Nonetheless, because the Court finds that the District's argument is without merit on the present record, the Court in its discretion briefly addresses this final argument.

Relying on a series of cases that, according to the District, stand for the proposition that "a single judicial decision made by a municipality's judge or court will not expose a municipality to liability pursuant to § 1983," the District argues that the Board's decision in this case similarly cannot constitute a municipal policy.  *See* Def.'s Resp. to Pl.'s Surreply at 4-6.  There are two principal problems with this argument.  First, even accepting that a municipality may not be held liable for the judicial decision of a municipal judge, such an argument is inapposite to Singletary's Section 1983 claim, which is premised on the action of the District of Columbia Parole Board – an executive entity.  While the decision whether to grant or revoke parole may be quasi-judicial in nature, the decision is nonetheless one entrusted to the executive branch.  *See In re J.M.W.*, 411 A.2d 345, 348-49 (1980) ("since parole occurs only after the sentence has begun to be served and the judiciary has transferred its supervisory authority to the executive branch, an alteration of parole status must necessarily involve the executive branch").  Second and more importantly, the cases relied upon by the District do not, as it claims, establish the overarching principle that judicial action can never give rise to municipal liability.  Rather, these cases stand for the much more limited proposition that a municipality may not be held liable under Section 1983 for actions taken by a municipal judge pursuant to his or her authority under *state* law, as the judge's actions in such a case are properly attributed to the state rather than the municipality.

17

That is, that the judges are not acting as final policymakers for the local governmental entities.

*See* Def.'s Resp. to Pl.'s Surreply at 4-6.[7]  These cases are consistent with the Supreme Court's

recognition that local government officials may in some cases be treated as acting on behalf of

the state rather than the local governmental entities.  *See, e.g., McMillian v. Monroe Co. ,*

*Alabama*, 520 U.S. 781 (1997) (finding that "Alabama sheriffs, when executing their law

enforcement duties, represent the State of Alabama, not their counties").[8]  Quite clearly, given

---

[7] *See Davis v. Tarrant Co., Texas*, 565 F.3d 214, 227 (5th Cir. 2009) (finding local judges' actions were attributable to state and not to county because actions were authorized by and taken pursuant to state law); *Granda v. City of St. Louis*, 472 F.3d 565, 569 (8th Cir. 2007) (finding that municipal judge's actions were not attributable to city because "[t]he municipal court is a division of the state circuit court, and review of a judge's decisions is to be sought in that court"); *Ledbetter v. City of Topeka, Kansas*, 318 F.3d 1183, 1189–90 (10th Cir. 2003) (finding municipality not liable for conduct of municipal judge when challenged actions were undertaken pursuant to state law); *Johnson v. Turner*, 125 F.3d 324, 335–36 (6th Cir. 1997) (finding county not liable for actions of local juvenile court judge because, *inter alia*, "[t]he functions of the juvenile court are established by state law" and the county could not affect actions taken by judge); *Eggar v. City of Livingston*, 40 F.3d 312, 314 (9th Cir. 1994) (finding municipality not liable for judge's action because the challenged action "arises from his membership in the state judiciary"); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) ("We have repeatedly held, however, that a municipal judge acting in his or her judicial capacity to enforce state law does not act as a municipal official or lawmaker."); *Woods v. City of Michigan City, Ind.*, 940 F.2d 275, 279 (7th Cir. 1991) ("Indiana law reveals that judges of Indiana's circuit, superior and county courts are judicial officers of the State judicial system: 'they are not county officials.'"); *Carlaban v. Vaughn*, 760 F.2d 662, 665 (5th Cir. 1985) (county judges' "judicial function . . . 'may more fairly be characterized as the effectuation of the policy of the State of Texas . . . for which the citizens of a particular county should not bear singular responsibility'") (quoting *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980)); *Familias Unidas*, 619 F.2d at 404 (same); *Bliven v. Hunt*, 478 F. Supp. 2d 332, 337–39 (E.D.N.Y. 2007) ("because the Queens County Family Court is a state entity . . . the judges' actions cannot be considered 'of the municipality' for the purpose of municipal liability"); *Edwards v. Hare*, 682 F. Supp. 1528, 1533–34 (D. Utah 1988) (finding that municipality not liable for actions taken by judge pursuant to his authority under state law).

[8] The importance of this distinction is that States – unlike municipalities, such as the District – are immune under the Eleventh Amendment from a Section 1983 suit for damages absent waiver from the State.  *Edelman v. Jordan*, 415 U.S. 651, 677 (1974); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

the unique nature of the District of Columbia's status, such concerns are not present in this case. Moreover, as noted previously, the District has ***not*** challenged Singletary's allegation that the Board was the District's final policymaker with respect to the issue of parole revocation. Accordingly, as the District has provided no other legal authority or case law in support of its argument that it cannot be held liable for the Board's quasi-judicial decision to revoke Singletary's parole, the Court finds that the District has not shown that Singletary's Section 1983 claim must fail.

While the District complains that denial of its Motion to Dismiss will effectively mean that "a municipality would be exposed to liability every time a judge or a court makes an erroneous decision or evidentiary ruling based on the law or individual facts before it," Def.'s Resp. to Pl.'s Surreply at 4, such a claim is wholly inaccurate.  The Court today finds only that the District has failed to show that it may not be held liable for the decision of the now-defunct District of Columbia Board of Parole to revoke an individual's parole in violation of the individual's due process rights.  The Court is not presented with, and makes no decision regarding, the District's liability for decisions made by municipal judges.  As to that point, however, the Court observes that such a wide array of barriers exist to preclude a potential plaintiff from successfully asserting a Section 1983 claim against a municipality based upon a judicial decision by a municipal judge as to sufficiently cast doubt on the District's alarmist claims.

Finally, the Court emphasizes that this Memorandum Opinion should not be read as ruling on either the ultimate viability or merits of Singletary's Section 1983 claim.  The Court finds herein only that the District has not shown on the present record and based on the

arguments presented in its Motion to Dismiss and supporting briefing that Singletary cannot

succeed on his claim.  Further briefing will be required to determine whether Singletary has in

fact stated a viable and meritorious claim under Section 1983.  With that understanding, the

District's [6] Motion to Dismiss is DENIED

## IV.  CONCLUSION

For the reasons set forth above, the District's [12] Motion for Leave to File a Response to

Plaintiffs' Surreply is GRANTED, and the District's [6] Motion to Dismiss is DENIED.

Date:   February 18, 2010


_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge