UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLES SINGLETARY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DISTRICT OF COLUMBIA, )<br>)<br>Defendant. )<br>) | Civil Action No. 09-0752 (ABJ)<br>Pretrial Conference:  11/28/2011 |

## **THE DISTRICT OF COLUMBIA'S MOTION *IN LIMINE***

Defendant District of Columbia, pursuant to Fed. R. Civ. P. 7 and 16, hereby moves this Honorable Court to exclude the following at trial:

1. All testimony, evidence, and argument related to Plaintiff's lost wages;

2. All testimony, evidence, and argument related to Singletary's medical treatment during his incarceration;

3. All testimony, evidence, and argument related to any pain, suffering, or other injuries of Plaintiff's children, spouse, friends, or family; and

4. All testimony and evidence that is cumulative.

As explained in the attached Memorandum of Points and Authorities, the requested relief is necessary to avoid tainting the trial of this matter with unduly prejudicial and inadmissible evidence.  A draft order is also submitted herewith.

WHEREFORE, for the foregoing reasons, the District of Columbia moves this Honorable Court to grant this motion.

Respectfully Submitted,

IRVIN B. NATHAN
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

ELIZABETH SARAH GERE
Assistant Deputy Attorney General, Civil Litigation Division

/s/ Stephanie E. Litos
STEPHANIE E. LITOS
D.C. Bar No. 483164
DWAYNE C. JEFFERSON
D.C. Bar No. 980813
Assistant Attorneys General
One Judiciary Square
441 4th St., N.W., 6th Floor South
Washington, D.C. 20001
(202) 724-6650; (202) 724-6649; (202) 741-0554 fax
stephanie.litos@dc.gov; dwayne.jefferson@dc.gov

Rule 7(m) Certificate

Undersigned counsel hereby certifies that on November 4, 2011, I contacted Plaintiff's counsel regarding the relief requested herein. Plaintiff's counsel opposes the motion.

/s/ Stephanie E. Litos
STEPHANIE E. LITOS
Assistant Attorney General

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLES SINGLETARY,           ) | |
| ) | |
| Plaintiff,           ) | |
| ) | |
| v.           ) | Civil Action No. 09-0752 (ABJ) |
| ) | Pretrial Conference:   11/28/2011 |
| DISTRICT OF COLUMBIA,           ) | |
| ) | |
| Defendant.           ) | |
| ) | |

**THE DISTRICT OF COLUMBIA'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION *IN LIMINE***

In support of its Motion *in Limine*, the District submits this Memorandum of Points and Authorities.

**FACTUAL BACKGROUND**

This case stems from a sentence of nine to 27 years that was imposed on Plaintiff Charles Singletary on November 29, 1983 by the Superior Court of the District of Columbia. *See* Presentence Report, attached hereto as Exhibit A.  The sentence related to two separate crimes: on April 16, 1982, Occaie Gray stated that he was carjacked by two armed men who forced him into the passenger seat of his vehicle, held a gun to his head, drove him to another location, robbed him of $1032, and forced him out of the car. *See id.*  Once out of the car, Gray was forced to lie on the ground on his stomach and was shot three times—twice in the face, and once in the hand. *See id.*  Four days later, on April 20, 1982, another complainant, Kenneth Poteat, stated that Singletary shot him in the arm after punching him in the face and chest. *See id.* Singletary left the scene of the attack in a vehicle, which was pursued by a police officer responding to the call. *See id.*  Singletary attempted to evade the officer, eventually jumping out

of the moving car with a gun in hand.  *See id.*  When the officer caught Singletary, the gun was recovered and the police determined that Singletary's vehicle was the stolen vehicle belonging to Gray, the victim of the carjacking four days earlier.  *See id.*

Singletary was charged with kidnapping while armed and assault with a dangerous weapon.  At the time of these crimes, Singletary was on probation after pleading guilty to a robbery that occurred on January 21, 1981.  In that case, Singletary was accused of being one of three men who held a man down, beat him, and stole $100 worth of items from him.  *See id.*  Singletary admitted to the crime, stating that he and his friends were "getting high on reefer," that the man was walking in front of them but looked back at them several times, and "my buddy fought him, as we all did."  *See id.*  In addition, Singletary had been charged with Common Assault, Failure to Pay Food Bill, and Resisting Arrest of Police Officer on September 10, 1979, Attempted Burglary and Petit Larceny on January 26, 1981, and Destroying Property, Attempted Unauthorized Use of a Vehicle, and Attempted Petit Larceny on March 20, 1982.  *See id.*

After pleading guilty to the charges of kidnapping while armed and assault with a dangerous weapon, Singletary was sentenced to nine to 27 years in prison.  Six years later, in 1990, Singletary was granted parole.  Singletary states that after he was released on parole he obtained a position as a barber at Brice's Barber Shop in Washington, DC, where he worked from 1990 until 1992.  Deposition of Charles Singletary at 56:6-58:2 (attached hereto as Exhibit B).  Singletary states that while at Brice's Barber Shop his income was "[m]aybe eight or nine hundred maybe a week.  Sometimes maybe less.  I'm not sure."  *Id.*  In 1992, Singletary left Brice's Barber Shop to work at Like That Barber Shop, where he worked until 1996.  *Id.* at 58:16-61:7.  While there, Singletary estimated his income as "[p]robably anywhere from eight hundred dollars to maybe nine something or something to that effect."  *Id.* at 61:8-62:5.  While

employed at both Brice's Barber Shop and Like That Barber Shop, Singletary did not file any tax returns. *See id.* at 58:4-14, 62:6-9. Singletary then moved to South Carolina, where he obtained a position as a home caretaker, earning an hourly rate that he estimated was minimum wage. *See id.* at 66:7-71:13. While in South Carolina, Singletary also worked at a barber shop, estimating that "you could make like maybe five to $700 maybe a week. . . something like that." *Id.* at 72:16-74:3. Although he did not personally file taxes for the year he lived in South Carolina, Singletary believed that his sister may have filed a return for him in relation to his home caretaker position. *See id.* at 74:10-76:2. Singletary did not have a copy of this return, and stated his sister did not have a copy either. *See id.*

While on parole, Singletary was arrested several times. In 1992, Singletary was charged with the first degree murder of his first wife, Mary, and charges were reinstated on June 10, 1993. *See* Parole Determination Record (attached hereto as Exhibit C). According to investigators in the case, Mary Singletary had been stabbed 37 times. See Affidavit of Peter Zeidenberg at ¶ 2 (attached hereto as Exhibit D). A revocation decision was made to reinstate Singletary's parole on August 26, 1993 after the charges were dropped, *see* Ex. C, Parole Determination Record, but Singletary was again arrested, and charges of first degree murder were reinstated on August 9, 1994. Singletary's parole subsequently was reinstated on March 7, 1995. *Id*; *see also* Warrant No. PE-30135-96 (attached hereto as Exhibit E). Additionally, on March 6, 1993, Singletary was arrested for Assault with a Dangerous Weapon, Threats, and Possession of an Unregistered Firearm. The charges were no papered the next day and the charges of having a Concealed Deadly Weapon were dismissed on June 9, 1993. *Id.*

On August 16, 1995, Singletary was arrested for the murder of Leroy Houtman, which was alleged to have occurred on April 18, 1995. *See id.*; *see also* Statement of Alleged Parole

Violations (May 30, 1996) (attached hereto as Exhibit F).  Houtman had been stabbed 51 times, and Carmelita Metts, Houtman's girlfriend, eventually confessed to two friends that she had murdered him with the help of Singletary and Gary Barnes.  *See* Ex. C, Parole Determination Record; *see also Singletary v. Reilly*, 452 F.3d 868, 870 (D.C. Cir. 2006); Ex. D, Zeidenberg Aff. at ¶ 4.  When questioned by police, Singletary denied knowing Barnes, but a subsequent search of the residences of Singletary and Barnes unearthed photos reflecting Barnes serving as the best man in Singletary's wedding.[1]  *See* Ex. D, Zeidenberg Aff. at ¶ 6-7; *see also Singletary v. Reilly*, 452 F.3d at 871.  Much of the prosecution's evidence in the Houtman case would have been inadmissible at trial, and ultimately the government chose not to seek an indictment of Singletary.  Ex. D, Zeidenberg Aff. at ¶ 8; *Singletary v. Reilly*, 452 F.3d at 871.  However, the federal prosecutor requested that Singletary's parole be revoked, which it was, on August 1, 1996.  *See* Ex. D, Zeidenberg Aff. at ¶ 10; Notice of Board Order (Aug. 1, 1996) (attached hereto as Exhibit H).  The remainder of Singletary's conviction was reinstated.  *See* Ex. H, Notice of Board Order.  As a result of the revocation, Singletary alleges that he was wrongfully imprisoned and spent the next ten years in prison.  *See* Complaint ¶ 24.

After filing several petitions for habeas corpus relief, Singletary was granted a new parole revocation hearing, at which the United States Parole Commission found no parole violation and reinstated Singletary to supervised release.[2]  *See* Notice of Action (Nov. 17, 2006) (attached

---

[1] Gary Barnes is referred to as someone "likely to have discoverable information his [sic] lifelong friendship with Mr. Singletary [and] Mr. Singletary's life during the period 1991-1996 while he was free on parole. . ." in Plaintiff's Initial Disclosures.  Plaintiff's Initial Disclosures at 3 (attached hereto as Exhibit G).

[2] The D.C. Parole Board is no longer in existence.  In 1997, pursuant to the National Capital Revitalization and Self-Government Improvement Act, Pub. L. 105-33, 111 Stat. 251, 734, the D.C. Parole Board was abolished and its responsibilities were assumed by the United States Parole Commission.  *See* D.C. Code § 24-131; *see also Crawford v. Jackson*, 323 F.3d 123, 125-126 (D.C. Cir. 2003).

hereto as Exhibit I).  The United States Parole Commission's order was issued on or about November 17, 2006, and Singletary was released from prison shortly thereafter.  *See id*.

In May 2007, months after his release, Singletary was again arrested, charged with Carrying a Pistol Without a License, Unlawful Possession of a Firearm, and Unlawful Possession of Ammunition.  *See* Docket, *United States v. Singletary*, 2007 CMD 011485; *see also* Government's Opp. to Defendant's Mot. to Suppress at ¶ 5 (attached hereto as Exhibit J) ("police officers had a valid warrant to search Nook's Beauty and Barber Shop.  The defendant [Charles Singletary] identified himself as an employee of Nook's Beauty and Barber Shop.  The defendant's bag was located near one of the work stations at the barber shop.  Defendant indicated to officers that the bag belonged to him.  Moreover, officers discovered the defendant's identification card inside of this bag.  The firearm and ammunition were also found inside of the very same bag.").  The charges were dismissed after the court ruled in Singletary's favor on his Motion to Suppress Evidence on Fifth Amendment Grounds.  *See* Docket, 2007 CMD 011485; *see also* Order Denying Defendant's Motion to Seal Publicly-Available Records (attached hereto as Exhibit K.)

Singletary now brings this action against the District pursuant to 42 U.S.C. § 1983, alleging that the D.C. Parole Board's revocation of his parole in 1996 violated his Fifth Amendment Due Process Rights, and demands judgment against the District in the amount of $20 million.  *See* Complaint, generally.  This Court has ruled in Singletary's favor on his Motion for Partial Summary Judgment on the issue of liability.  A jury trial on the issue of damages will commence on December 6, 2011.

## STANDARD OF REVIEW

The purpose of a motion *in limine* is "to narrow the evidentiary issues at trial." *Williams v. Johnson*, 747 F. Supp. 2d 10, 14 (D.D.C. 2010). The Federal Rules of Evidence generally permit the admission of relevant evidence, provided its probative value is not substantially outweighed by its potential prejudicial effect. *See id.*; *see also* Fed. R. Evid. 403. The district courts "are afforded broad discretion in rendering evidentiary rulings, a discretion which extends to assessing the probative value of the proffered evidence and weighing any factors against admissibility." *Williams*, 747 F. Supp. 2d at 14 (citing *Sprint/United Mgmt. Co. v. Mendelsohn,* 552 U.S. 379, 384 (2008)).

## ARGUMENT

### I. Evidence of Plaintiff's Lost Wages is Speculative and Inadmissible.

All claims for damages must be supported by enough evidence to create a reasonable basis from which to estimate the value of a party's loss. *Costa v. George*, 1991 U.S. Dist. LEXIS 1999 (D.D.C. July 12, 1991) (holding that a plaintiff's claim for lost wages was speculative); *see also Hill v. Republic of Iraq*, 328 F.3d 680, 684 (D.C. Cir. 2003) ("a plaintiff may recover damages for past economic losses if such losses are reasonably proved."). Although damages are not required to be proven with mathematical certainty, they may not be based merely on speculation or guesswork. *See, e.g.*, *Costa*, 1991 U.S. Dist. LEXIS 1999 at *2.

In his Rule 26(a) initial disclosures, Singletary states that he is seeking $330,000 in lost income, which represents $55,000 a year for the first six years of his incarceration. In his initial disclosures, Singletary also claims that he earned $55,000 a year as a barber in Washington, DC, and earned "approximately the same amount" when he moved to South Carolina. *See* Ex. G, Plaintiff's Initial Disclosures at 9.

However, Singletary has absolutely no evidence to support this speculative figure. At his deposition, Singletary testified that from 1990 through 1996, the time of his original parole, he held four jobs: from 1990 through 1992 as a barber at Brice's Barber Shop in Washington, DC; from 1992 through 1996 as a barber at Like That Barber Shop;[3] and in 1996 as a home caretaker with the Sumter County Special Needs Board and as a barber with Family Salon. Ex. B, Singletary Dep. at 56:6-74:9. Singletary has provided no documentary evidence of his wages while he was allegedly employed from 1990 through 1996, and has admitted that he did not file any tax returns for the barber jobs he allegedly held. *Id.* at 58:4-14, 62:6-9, 74:10-76:2. Although he believes his sister may have filed a tax return for his position with Sumter County Special Needs Board, he does not have any proof of income or any tax return. *Id.* at 74:10-76:2. The only evidence of any wages earned is Singletary's deposition testimony, which is vague and highly speculative. When asked about his wages at Brice's Barber Shop, Singletary stated that his income was "[m]aybe eight or nine hundred maybe a week. Sometimes maybe less. *I'm not sure*." *Id.* (emphasis added). Concerning his alleged income at the Like That Barber Shop, Singletary was equally uncertain, testifying:

> it really varies, because, you know, you have your slow days and you have your good days. Say *maybe* Monday through Wednesday or Thursday, you *might* can make like 125 maybe or it depends, and *maybe* Friday, Saturday and Sunday you make, like on a Friday you *might* can make close to 250, *maybe* $300, *it depends*. Saturday, likewise Sunday, you can make almost like *maybe* $225 to $250.

*Id.* at 61:15-61:22 (emphasis added). When asked how much he made per week on average, he responded "[p]robably somewhere from eight hundred dollars to *maybe* nine something or

---

[3] Although Singletary testified that he worked at Like That Barber Shop until his parole was revoked in 1996, he later testified that he left Washington, DC and moved to South Carolina in December 1995, where he held two jobs. *See* Ex. B at 61:3-7, 63:3-10. Thus, it is unclear if he ceased working at Like That Barber Shop in 1995 or 1996.

7

something to that effect." *Id.* at 62:3-5 (emphasis added). Singletary's recollection of his income in South Carolina was equally vague, stating that he didn't remember how much he earned, but that "I think we started off at minimum wages." *Id.* at 71:2-6. At Family Salon, Singletary could only testify that "you could make like *maybe* five to $700 maybe a week. . . . Something like that." *Id.* at 73:22-74:3 (emphasis added).

The numbers provided by Singletary do not even approach the $55,000 a year figure he claims to have earned. More important, his testimony is highly speculative and does not provide a reasonable basis for any award of lost wages. Every answer Singletary provided regarding his wages was equivocal and full of guesswork. The plaintiff bears the initial burden of establishing the value of the lost salary and benefits. *Barbour v. Merrill*, 48 F.3d 1270, 1278 (D.C. Cir. 1995). Singletary has failed to meet his burden; at best he has a vague recollection of a wide range of wages, rife with speculation, and with absolutely no evidence to support any income amounts he has asserted. There can be no question that any claims regarding lost wages must be excluded, as Singletary has failed to provide a reasonable basis upon which a jury can assess his alleged lost wages damages.

**II. Evidence Regarding Medical Care and Treatment During Plaintiff's Incarceration is Irrelevant and Not Supported by Expert Testimony.**

All evidence relating to medical care Singletary received while in prison should be excluded. Singletary has argued that he became legally blind while incarcerated, *see* Complaint at ¶ 27, and that the "loss of his eyesight was proximately caused by the revocation of his parole and consequent imprisonment." *Id.* at ¶ 28.

Allegations relating to prison conditions "are subject to Eighth Amendment scrutiny." *Stoddard v. District of Columbia*, 764 F. Supp. 2d 213, 218 (D.C. Cir. 2011). Singletary has never made any claims of Eight Amendment violations in this action. *See* Complaint, generally.

Nor has this Court considered or granted such relief in response to Plaintiff's Motion for Partial Summary Judgment. *See* Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment and in Support of his Cross-Motion for Summary Judgment as to Liability [Docket # 31]. This Court granted relief to Plaintiff based upon a deprivation of Fifth Amendment due process. *See* August 1, 2011 Interlocutory Order [Docket # 41 at 1] ("This case presents the question of whether the District of Columbia can be held liable under 42 U.S.C. § 1983 for a parole revocation decision made by the District of Columbia Board of Parole that violated plaintiff's right to due process under the Fifth Amendment of the U.S. Constitution.") Plaintiff should not be permitted to assert through the back door an Eighth Amendment claim for deliberate indifference to medical need that he has never asserted, to which the District has never been afforded an opportunity to respond, and upon which this Court did not base its liability determination. As Singletary has failed to plead an Eighth Amendment violation, he cannot recover for any alleged loss of eyesight that may have occurred due to the conditions of his imprisonment.[4]

Regardless, even if Singletary had properly brought an Eighth Amendment claim, he has not designated an expert to testify regarding his impaired eyesight. The cause of Singletary's glaucoma, the impact of medical treatment on his disease, and his subsequent vision impairment are complicated medical questions that are not within the purview of the average layperson. As such, expert testimony is necessary. *See* Fed. R. Evid. 701 ("If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions

---

[4] To the extent Singletary had *any* complaints about *any* conditions of his confinement during his incarceration, the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, *et seq.*, would have been applicable and required him to exhaust his administrative remedies before bringing suit. The purpose of the PLRA is to give prison authorities notice of problems in correctional facilities and an opportunity to resolve them pursuant to internal procedures prior to litigation in court. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). Singletary did not do so. Moreover, he has made no claim related to the conditions of his confinement under the Eighth Amendment. *See* Complaint, generally. Thus, if Singletary attempts to recover damages for *any* condition of his confinement, he should be barred from doing so.

or inferences which are . . . (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."); *see also Godfrey v. Iverson*, 559 F.3d 569, 572 (D.C. Cir. 2009) (expert testimony is necessary when "the subject in question is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson"); *Briggs v. Washington Metropolitan Area Transit Auth.*, 481 F.3d 839, 845 (D.C. Cir. 2007) (expert testimony is required when the subject matter is outside the knowledge of the average layperson, but "no expert testimony is needed if the subject matter is within the realm of common knowledge and everyday experience").  Without an expert, Singletary cannot succeed on any claim that any impairment of his eyesight was proximately caused by any act or omission of the District.  Any evidence that Singletary may provide regarding the purported lack of medical care he received for his eyes would therefore be irrelevant and serve no probative value, while being highly prejudicial to the District, and should be excluded.

### III. Evidence of Pain, Suffering, or Other Injuries Sustained by Plaintiff's Family and Friends is Irrelevant and Inadmissible.

In his Initial Disclosures, Singletary has listed several family members and friends as potential witnesses, including his mother, Rosa Culbreath, his ex-wife, Barbara Jean Singletary, his brother, Perry Singletary, his children, Devon Floyd, Devante Floyd, Charles Singletary, Jr., and Tonniko Williams, and his daughter's sister, Tiffany Williams Myran.  Ex. G, Plaintiff's Initial Disclosures at 2-7.  These are all third-party witnesses, none of whom has made any personal claims against the District.  Thus, any evidence these individuals may provide regarding the impact of Singletary's incarceration on them is wholly irrelevant to this proceeding and should be excluded.

### IV. Cumulative Evidence Should be Excluded

### A. Singletary's Family Members.

The testimony Singletary intends to offer from his family members is cumulative. In his Initial Disclosures, Singletary states that:

- Rosa Culbreath "is likely to have discoverable information about how her son's incarceration affected her son's outlook and life;"

- Barbara Singletary "is likely to have discoverable information concerning her marriage to Mr. Singletary; their life together before his parole was revoked; the effect of Mr. Singletary's incarceration on their marriage and on Mr. Singletary's relationship with his children; and the effect on Mr. Singletary of being incarcerated;"

- Devon Floyd "is likely to have discoverable information concerning Mr. Singletary's relationship with him before the revocation of Mr. Singletary's parole and on the effect of the revocation on that relationship and on Mr. Singletary;"

- Devante Floyd "is likely to have discoverable information concerning Mr. Singletary's relationship with him before the revocation of Mr. Singletary's parole and on the effect of the revocation on that relationship and on Mr. Singletary;"

- Tiffany Williams Myran "is likely to have discoverable information concerning Mr. Singletary's relationship with her before the revocation of Mr. Singletary's parole and on the effect of the revocation on that relationship and on Mr. Singletary;"

- Charles Singletary, Jr. "is likely to have discoverable information concerning Mr. Singletary's relationship with him before the revocation of Mr. Singletary's parole and on the effect of the revocation on that relationship and on Mr. Singletary;" and

- Tonniko Williams "is likely to have discoverable information concerning Mr. Singletary's relationship with her before the revocation of Mr. Singletary's parole and on the effect of the revocation on that relationship and on Mr. Singletary."

Ex. G, Plaintiff's Initial Disclosures at 2, 5-7.  The presentation of trial testimony on the same topic from seven witnesses will be a "needless presentation of cumulative evidence," and, as such, will cause undue delay and prejudice to the District.  *See* Fed. R. Evid. 403.  Thus, in addition to barring Singletary's witnesses from testifying regarding any personal impact of Singletary's confinement, this Court should also limit the number of witnesses who will testify regarding the effect the parole revocation had on Singletary and his personal relationships.

### B.  Singletary's Fellow Inmates.

Additionally, Singletary has named five fellow inmates—Gary Barnes, Kevin Johnson, Lorenzo Roye, Robert Quick, and William Ward—who are offered to testify regarding the conditions of their confinement.  Ex. G, Plaintiff's Initial Disclosures at 2-4.  As argued in Section II, *supra*, this testimony should be excluded as irrelevant and unduly prejudicial.  However, should the Court allow that testimony, it should limit the number of witnesses who can testify regarding the conditions of Singletary's confinement, as the testimony is cumulative, will cause undue delay at trial, and will unfairly prejudice the District.  *See* Fed. R. Evid. 403.

### CONCLUSION

For the foregoing reasons, the District's Motion *in Limine* should be granted.

        Respectfully Submitted,

        IRVIN B. NATHAN
        Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

ELIZABETH SARAH GERE
Assistant Deputy Attorney General, Civil Litigation Division

/s/ Stephanie E. Litos
STEPHANIE E. LITOS
D.C. Bar No. 483164
DWAYNE C. JEFFERSON
D.C. Bar No. 980813
Assistant Attorneys General
One Judiciary Square
441 4th St., N.W., 6th Floor South
Washington, D.C. 20001
(202) 724-6650; (202) 724-6649; (202) 741-0554 fax
stephanie.litos@dc.gov; dwayne.jefferson@dc.gov