### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| CHARLES SINGLETARY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 09-0752 (ABJ) |
| ) | |
| DISTRICT OF COLUMBIA, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Charles Singletary brought this action against the District of Columbia under 42 U.S.C. § 1983, seeking money damages for what the U.S. Court of Appeals for the D.C. Circuit had already found was a violation of his constitutional rights by the D.C. Parole Board.

As is set out in more detail in the Court's opinion granting partial summary judgment, *see Singletary v. District of Columbia*, 800 F. Supp. 2d 58, 59–61 (D.D.C. 2011), [Dkt. # 41], plaintiff was released on parole in 1990, after serving more than seven years of a nine to twenty-seven year sentence for armed robbery. *Id*. at 60. Five years later, he was arrested as an alleged participant in a murder, but the charges were dropped at the preliminary hearing, and he was never indicted by a grand jury or tried. *Id*. Nonetheless, the District of Columbia Board of Parole revoked his parole, sending him back to prison for ten more years. *Id*.

No one with personal knowledge of the crime testified at the hearing. A police detective and a prosecutor relayed information provided by two individuals who reported that others involved in the murder had told them that Singletary was involved. *Id*. After plaintiff filed numerous habeas corpus petitions in both state and federal court, the Court of Appeals finally

granted relief, holding that the Board's decision was based on such a "shoddy" record that it violated Singletary's constitutional right to due process. *Id*., citing *Singletary v. Reilly*, 452 F.3d 868, 869 (D.C. Cir. 2006). The D.C. Circuit found that "the hearsay presented at the hearing was not demonstrated to be reliable," and that "the Board's decision to revoke Singletary's parole was therefore 'totally lacking in evidentiary support.'" *Singletary v. Reilly*, 452 F.3d at 873.

The court made it clear that it was not overturning the Board's decision just because it had been based on hearsay – hearsay is admissible in parole hearings. Rather, it held that "the government has not established that the hearsay deemed adequate by the Board was sufficient in . . . reliability to ensure fundamental due process rights." *Id.* at 874 (internal quotation marks and citations omitted). The court ordered that a new hearing be convened, *id.* at 875, and by that time, the D.C. Board of Parole was no longer in existence. The U.S. Parole Commission held a hearing and found no parole violation, and plaintiff was released from prison in 2006. *Singletary v. District of Columbia*, 800 F. Supp. 2d at 61. He filed the action before this Court for money damages on April 23, 2009, asserting one cause of action under 42 U.S.C. § 1983. [Dkt. # 1].

The Court denied the District's motion to dismiss on February 18, 2010. [Dkt. # 17]. The District later moved for summary judgment, [Dkt. # 30], arguing that under the doctrine articulated in *Monell v. Dep't of Soc. Serv. of the City of New York,* 436 U.S. 658, 690 (1978), the municipality could not be held liable for the Board's deprivation of plaintiff's constitutional rights. On August 1, 2011, the Court denied defendant's motion for summary judgment and granted summary judgment in favor of the plaintiff on the question of liability. [Dkt. # 40, # 41]. On October 7, 2011, the Court denied the District's motion for reconsideration. [Dkt. # 48,

# 49].  With liability thus resolved, a jury trial was held on the question of damages only, and the jury returned a verdict of $2.3 million.  [Dkt. # 73].[1]

Defendant has moved for a new trial, or in the alternative, for remittitur, arguing that certain errors in the conduct of the trial warrant a new trial, and that the jury verdict was excessive and not supported by the evidence.  [Dkt. # 76].  While it is somewhat difficult to discern the precise grounds upon which the District is predicating its motion, it appears to be advancing the following contentions:

I.   The $2.3 million verdict is excessive;

II.   The Court erred when it excluded evidence that defendant sought to introduce for the purpose of persuading the jury that plaintiff had in fact committed the murder for which he was never indicted;

III.   The Court erred when it excluded evidence concerning the facts underlying plaintiff's previous periods of incarceration;

IV.   The Court erred in permitting plaintiff to introduce evidence concerning the conditions of his confinement, which consisted of his testimony describing what he experienced during that ten year period;

V.   The Court erred when it indicated during *voir dire* and in preliminary instructions that plaintiff had been arrested as "an accomplice" to a murder; and

VI.   The Court erred in excluding evidence of a driving infraction in Virginia.

Since the properly instructed jury's verdict does not shock the conscience, and since defendant has failed to identify a substantial error that would support the grant of a new trial under Federal Rule of Civil Procedure 59(a)(1)(A), the motion will be denied.

---

1   A transcript of the trial proceedings was not available at the time this opinion was written because neither party had ordered it.  References in this opinion to events that occurred at trial are based on the Court's records of the trial proceedings.  Any discrepancies between the parties' recollections and the Court's records will be resolved by the trial transcript when it is made available to the Court of Appeals.

I.       **The $2.3 million verdict was in accordance with law and was not excessive.**

The District contends that the Court should order a new trial or remit the verdict because the jury's award of $2.3 million dollars was too high.  Def.'s Mem. in Supp. of the District of Columbia's Mot. for New Trial or Remittitur ("Def.'s Mem. New Trial") [Dkt. # 76] at 28–32. But the District cannot support its claim that the verdict – arrived at after due deliberation by a jury of nine – was unreasonable, and there is nothing to suggest that the verdict was the product of prejudice or passion.

Here, the jury had the unenviable task of quantifying something that is not easily quantifiable:  what is a year of liberty worth?  The Court is reminded of the well-known lyrics from *Rent:*

> Five hundred twenty-five thousand six hundred minutes
> How do you measure, measure a year?
>
> In daylights, in sunsets, in midnights, in cups of coffee
> In inches, in miles, in laughter, in strife;
> In five hundred twenty-five thousand six hundred minutes
> How do you measure a year in the life?

Jonathan Larson, *Seasons of Love*, on Rent (Verve 1996).  To answer this question, the jury was given a number of factors that it could fairly consider, *see* Jury Instructions, Ex. A, at 33–34, and plaintiff's closing argument was based on the facts admitted in evidence and not any improper appeal.  Ultimately, the jury concluded that Singletary was entitled to recover $230,000 per year – or about forty-four cents per minute – for each year that he was stripped of the privileges of individual choice and physical freedom and subjected to the indignity of incarceration, and there is nothing about that calculation that needs to be reduced.  This is not an astronomical sum.

Indeed, the only thing that did shock the conscience in this case was the fact that the District of Columbia chose to argue that because the plaintiff was a convicted felon who had

previously served time in jail, he was entitled to no damages at all.   Apparently, according to the District's lawyers, someone with Mr. Singletary's background has no humanity, no entitlement to liberty, and did not suffer *any* harm, either when he was incarcerated without due process of law, or when he remained wrongly incarcerated for the next ten years.  The jury had the chance to award a verdict of only one dollar, but it did not, and it certainly had sufficient cause to reject this insulting entreaty.[2]

Moreover, a review of the case law indicates that the verdict was not excessive, particularly given the size of other verdicts in cases where the duration of the wrongful incarceration was much shorter.  As plaintiff points out, the amount the jury awarded to plaintiff is lower than judgments in similar cases that have been found to be reasonable.  Pl.'s Opp. to Def.'s Mot. for a New Trial [Dkt. # 79] at 29, citing *Smith v. City of Oakland*, 538 F. Supp. 2d

---

[2]      The Court also wonders whether, instead of being excessive, the verdict was possibly depressed by defense counsel's insistence on pursuing the character assassination theory that counsel claimed he would not, and the Court repeatedly ordered he could not, pursue.  This began with the very first question on cross-examination where the District asked plaintiff to admit that he was not perfect and continued through such unnecessary excursions as the exploration of the nature of the relationships plaintiff had or did not have with the mothers of his children.

This observation brings the Court to another claimed ground for a new trial:  the fact that the Court addressed counsel for the District frequently at bench conferences.  *See* Def.'s Mem. New Trial at 12.  If the defendant views frequent bench conferences to be damaging in the eyes of the jury, it should in the future take steps to ensure that its attorneys heed the Court's admonitions the first time they are issued.  In any event, this basis for a new trial also fails because as the transcript will reveal, the Court took great pains to communicate its concerns to counsel during recesses and at the bench and not in front of the jury, and it repeatedly instructed the jury that it should not consider the number or length of the bench conferences to be the fault of either party.  *See, e.g.*, Jury Instructions at 11 ("While it may have been natural for you to become impatient with the delay caused by objections or other portions of the proceedings, you must not let your feelings in any way affect your deliberations.").  The defendant cites case law related to excessive judicial interruption and participation in the proceedings, Def.'s Mem. New Trial at 11, but those cases are inapposite.  The District has identified only one question that the Court posed during the entire cross examination of plaintiff Singletary, and the law is clear that the Court may ask even multiple clarifying questions.  *See* Fed. R. Evid. 614(b) ("The court may examine a witness regardless of who calls the witness.").

1217, 1241–43 (N.D. Cal. 2008) (jury award of $5 million for four-and-a-half months of imprisonment, which was remitted to $3 million); *Sarsfield v. City of Marlborough*, Civil Action No. 03-10319-RWZ, 2007 WL 210389, at *1 (D. Mass. 2007) (awarding plaintiff approximately $13.6 million for nearly ten years' imprisonment); *Pitt v. District of Columbia*, 404 F. Supp. 2d 351, 356 (D.D.C. 2005), *aff'd in part and rev'd in part on other grounds*, 491 F.3d 494 (D.C. Cir. 2007) (awarding $100,000 for six days' imprisonment). While these cases present different facts than this case, they are helpful in putting the jury verdict awarded to plaintiff in context. When compared to these cases, it is clear that the jury's verdict here was far from excessive.

The District also argues that a federal statute, 28 U.S.C. § 2513, supports a finding that the verdict in this case was excessive. That law provides that in an action brought under 28 U.S.C. § 1495, the amount of damages awarded shall not exceed $50,000 for each twelve month period of wrongful incarceration. 28 U.S.C. § 2513. Although the District correctly notes that plaintiff's lawsuit does not arise under these statutes, it claims that the law's formulation of damages should be instructive. But what the legislature has determined that the government would be willing to pay to resolve a wrongful incarceration claim does not impose any sort of ceiling on what a jury can fairly decide. Here, the jury – which heard all the evidence in the case and assessed the credibility of the witnesses, including the plaintiff – determined that an amount of money greater than what was contemplated in that statute was necessary to compensate plaintiff for the particular harm he experienced. The District has failed to persuade the Court that it should alter that determination for any reason.

## II. Evidence tying plaintiff to the murder of Leroy Hautman (and any other uncharged crimes) was properly excluded.

In this case, the jury was instructed that the plaintiff had been convicted of kidnapping while armed and assault with a dangerous weapon in 1984, that he was sentenced to a term of

nine to twenty seven years, and that he was released from prison on parole in 1990.   Jury Instructions at 15.   But throughout the proceedings in this case, the District labored mightily to come up with a theory that would justify the introduction of the factual circumstances underlying that conviction, as well as facts underlying arrests for other, uncharged offenses.

In particular, the District sought to establish that plaintiff had in fact committed the murder of Leroy Houtman, which prompted the revocation of his parole.   *See, e.g.,* Am. Joint Pretrial Statement [Dkt. # 58] at 4; Def.'s Opp. to Pl.'s Mot. In Limine [Dkt. # 60] at 3 (asserting that the evidence would be relevant to the "severity of Plaintiff's claimed harm"); *id.* at 4 (arguing that evidence concerning plaintiff's arrests while on parole would be relevant:  to prove "Plaintiff's conduct prior to the parole revocation,"  to refute the suggestion that plaintiff "was 'successfully on parole,'" and to counter "Plaintiff's version of the life he led"); and *id.* at 5 (arguing that if plaintiff presented evidence that he experienced or witnessed physical brutality or harsh treatment in prison, the defense should be able to introduce evidence of physical brutality he experienced or participated in when he was *not* in prison).   These successive efforts were rebuffed, first and foremost because the evidence was not relevant, that is, it did not have a tendency to make a fact that "is of consequence in determining the action" more or less probable than it would be without the evidence.   Fed. R. Evid. 401.   The Court also based its rulings on Federal Rules of Evidence 403, 404, and 608(b), *see* Mem. Op. and Order on Pl.'s Motion in Limine ("Mem. Op. on Pl.'s Mot. In Limine") [Dkt. # 63], since it appeared that the District was primarily interested in demonstrating that plaintiff Singletary was an individual of such bad character that he was unworthy of the jury's consideration.

Furthermore, the District failed to articulate how the evidence – even if it were somehow relevant – would be admissible.   The District sought to introduce affidavits prepared by, and/or

live testimony from, the detectives and prosecutor who investigated the Houtman case and to thereby present what certain witnesses had told them.  Am. Joint Pretrial Statement at 12, 21.  It also sought to introduce a transcript of the testimony of Terri Washington from the trial of Carmelita Metts – who was convicted of conspiring to murder Houtman – in which Washington recounted Mett's statements to her.  *Id*. at 25.  But the hearsay imbedded in the proposed testimony fell under no identified exception, and the proffered trial testimony was inadmissible since plaintiff Singletary had not been a party to the Metts proceeding.  *See* Fed. R. Evid. 804(b)(1).

Notwithstanding those obstacles, the District argued that the evidence should be admitted to undermine plaintiff's claim that he had *not* committed the murder.  Def.'s Opp. to Pl.'s Mot. In Limine at 9; Def.'s Mem. New Trial at 7.  Since plaintiff disavowed any intention of introducing such testimony in the damages phase of the case, the Court excluded the evidence, but it noted that a change in plaintiff's strategy could conceivably open the door to an exploration of those facts.  *See* Mem. Op. on Pl.'s Mot. In Limine at 3.[3]

The District took its final pass at the issue when it argued on the eve of trial that the evidence was admissible under *Carey v. Piphus,* 435 U.S. 247 (1978), for the purpose of

---

3       The District objects to that as well, complaining that in ruling on the evidentiary question and making the unremarkable and completely appropriate observation that a change in tactics could open the door to reconsideration of the issue, the Court was taking sides and unfairly giving the plaintiff advice about how to try his case.  Def.'s Mem. New Trial at 5–7.  The lawyers for the District of Columbia should be well aware that courts often advise parties that excluded evidence could become admissible under certain circumstances, and that it is perfectly acceptable for the parties to take those statements into account in planning their trial strategy.

   The District also complains that the Court identified the decedent and the individual convicted of conspiring to murder him by name during *voir dire* "contrary to its own cautionary admonition against discussing Houtman or Metts."  *Id*. at 5.  Obviously, the Court's statements during *voir dire* were not evidence, and they did not contravene the evidentiary ruling in the case.  And, of course, one key purpose of *voir dire* is to flush out any potential jurors who might have knowledge of the facts underlying the case.  So, it was necessary at that stage, but at no other, to name the decedent and the other alleged participants in the crime.

demonstrating that the deprivation of due process did not cause plaintiff's injury because his parole would have been revoked even if the hearing had comported with the Constitution.  Def.'s Opp. to Pl.'s Mot. In Limine at 7.  Absent that causal link between the constitutional violation and the injury, the District argued, plaintiff would only be entitled to nominal damages.  *Id*.  The Court issued a written ruling excluding the evidence, and defendant has not advanced any new arguments for why it was incorrect.  In its ruling, the Court stated the following:

> At the outset, the Court notes that the District has advanced this argument for the very first time in an opposition to a motion in limine filed on a Friday night before a Tuesday trial.  Not only was it not raised at any point during the extensively briefed summary judgment proceedings in this case, but the defendant did not even list this as one of the twenty-two defenses it chose to include in the Pretrial Statement filed on November 21, 2011, or the Amended Pretrial Statement filed on November 28, 2011.
>
> More important, the District misstates the holding of the single case upon which it relies: *Patterson v. Coughlin*, 905 F.2d 564 (2d Cir. 1990).  What the District is talking about is causation, and causation goes to liability, and not damages.
>
> > In *Patterson*, the court did explain:
> >
> > > It is clear that where there has been a denial of due process, the victim is entitled at least to nominal damages.  *See Carey v. Piphus*, [435 U.S. 247, 266] (1978).  Nonetheless, *Carey* also made it clear that even where a denial of due process has been followed by a liberty deprivation, unless the deprivation was caused by the violation, the plaintiff is limited to nominal damages . . . ("injury caused by a *justified* deprivation . . . is not properly compensable under § 1983") . . . .
>
> 905 F.2d at 568.  But whether an injury is compensable at all is a liability issue.  The court in *Patterson,* did not, as the District suggests, remand the case so that the jury could determine whether a fair hearing would have produced a different result, and so that it could choose between awarding nominal damages or something more.  The causation discussion quoted above was contained within the section of the opinion entitled "Deprivation, Causation, and Burden of Proof," which begins: "on the issue of liability . . . ."  *Id.*  In that portion of the opinion, the court concluded that while in that circuit, the plaintiff would have ordinarily had

the burden to prove causation, the defendant was responsible for his inability to do so, and therefore, the burden should be shifted to the state. *Id*. at 570. Under those circumstances, causation was essentially conceded. *Id*. It was in the second section of the opinion, entitled "The Issue of Damages," that the court remanded the matter. *Id*. at 571. And it did so on the sole ground that the district court had improperly decided the amount of damages to be awarded itself on summary judgment. The court of appeals held that the defendants were entitled to have that issue be determined by a jury, exactly as it will be in this case. *Id*. at 570–71. The opinion does not stand for the proposition that the causation question must be presented to the jury as part of the damages case.

Moreover, this case is distinguishable from *Patterson*. In that case, the plaintiff, an inmate, challenged the hearing that led to his confinement within a special housing unit after an alleged assault on a correctional officer. *Id*. at 566. When the matter was before the trial court, it was an open question whether a properly conducted hearing would have led to the same result. But here, there is no genuine dispute that after the D.C. Circuit granted habeas relief, another probation revocation proceeding was held, and the parole board did <u>not</u> revoke the plaintiff's parole. *See* Def.'s Mot. Summ. J. [Dkt. # 30] at Ex. E. Defendant's suggestion that it is entitled to get yet a third bite at the probation revocation apple because it was the U.S. Parole Board, and not the defunct D.C. Parole Board, that conducted the second hearing is not persuasive: the question of what a parole board would do with the Houtman murder evidence if it had to conduct a hearing that comported with due process has been answered. And the District has never previously indicated that this factual issue underlying liability was in dispute.

Furthermore, the District cannot colorably assert that it should be able to introduce evidence concerning plaintiff's arrest for a different murder, his arrest for assault and possession of a firearm, or his contacts with known criminals while on parole on the theory that plaintiff's parole could have been revoked on those grounds, when in fact, those facts were known at the time and his parole was *not* revoked on those grounds. *See* Def.'s Statement of the Case, Amended Pretrial Statement, Dkt. # 57, at 3–4.

Finally, even if the Court were inclined to reopen the question of liability to consider the causation question now, the District has not articulated how the proffered evidence would be admissible. For example, with respect to the murder of Leroy Houtman, the District proffers testimony of Terri Washington, which would be hearsay not covered by Fed. R. Evid. 804(b)(1), because the plaintiff had no opportunity for cross examination, and, to make matters worse, Washington's testimony

includes hearsay statements made to her by Carmelita Metts that are not otherwise admissible.  *See* Fed. R. Evid. 805.

In sum, the District is not going to be permitted to use the damages portion of this narrowly focused civil action to try the plaintiff for the first time for collateral offenses – including two murders – for which he was never even indicted, much less convicted, and it certainly isn't going to do so based on inadmissible hearsay.

Mem. Op. on Pl.'s Mot. In Limine at 5–7.

In its motion for new trial, the District takes issue with the notion that it failed to raise causation as an issue during the liability phase of the proceedings, and it points to the fact that *Carey v. Piphus* was specifically cited in a pleading filed at Dkt. # 32 on page 18.  Def.'s Mem. New Trial at 16.  But this does not help matters at all:  Dkt. # 32 was a cross-motion for summary judgment filed by the *plaintiff*, not by the defendant.   In that pleading, plaintiff demonstrated his correct understanding that the causation issue related to liability, and, apparently anticipating that the District might raise the point, he argued preemptively that the defendant should not be able to avoid liability on *Carey v. Piphus* grounds.  *Id.*  Even in response to that, the District did not take up the cause.  Instead, in its opposition to plaintiff's cross-motion for summary judgment, the District made only these statements about causation:

Plaintiff seeks to have this Court find that the Board's actions proximately caused his claimed injuries.  On this record, no such finding can be made.  First, and most importantly, plaintiff has not established municipal liability against the District.  Absent liability, no analysis of proximate cause is necessary.  Next, plaintiff has not demonstrated that the District's actions "proximately" caused his claimed injuries.  "Proximate cause is . . . a test of whether the injury is the natural and probably consequence of the negligence or wrongful act and ought to be foreseen in light of the circumstances." . . . First, this is not a negligence cause of action.  Next, plaintiff has not shown in this record that the District of the Board knew about his relationship with his spouse, or with his children or that these relationships were tethered [sic] only as a result of the Board's claimed misconduct.  As such, no finding can be made on this record regarding plaintiff's claim that the Board's actions proximately caused his injuries.

11

Def.'s Reply in Further Support of its Mot. for Summ. J. and in Opp. to Pl's Cross-Motion for Summ. J. [Dkt. # 34] at 13.

So, the District never asserted during the liability phase of this action that under the *Carey v. Piphus* line of cases, plaintiff could not establish causation.[4]  The Court properly concluded that plaintiff's alleged involvement in the murder, or his alleged commission of other offenses while on parole, were not matters to be explored in the damages phase of the case.  And, as noted above, the District did not advance admissible evidence to do so in any event.

The District goes on to complain throughout its motion for new trial that the jury should have been permitted to conclude that plaintiff did not suffer any injury anyway and to award only nominal damages for that reason.  *E.g.*, Def.'s Mem. New Trial at 9, 27–28.  But its suggestion that the jury did not have this opportunity is contrary to the record.  At the close of the case, the jury was instructed:

> Ordinarily, what jurors have to do is to determine first whether a plaintiff has established that a defendant is liable, and, if he has, then they must award damages.  As I informed you at the start of this case, the first step in this case has already been decided.  The United States Court of Appeals for the District of Columbia Circuit has ruled that the D.C. Board of Parole violated Mr. Singletary's constitutional rights when it revoked his parole in 1996 without due process of law.  And you are instructed that as a matter of law, the District of Columbia is liable to the plaintiff for the harm he suffered as a result.  So the questions for you to decide are: whether the deprivation of plaintiff's liberty caused him harm, and if so, what amount of damages will compensate him for that harm.
>
> If you find that the plaintiff was harmed, you must award him a sum of money which will fairly and reasonably compensate him for all

---

4    While the District moved for reconsideration [Dkt. # 44] of the Court's order granting partial summary judgment in favor of the plaintiff [Dkt. # 41], it did not challenge the statement at the end of the Court's memorandum opinion that said: "The only remaining issue is a determination of damages."  *Singletary v. District of Columbia*, 800 F. Supp. 2d at 74.

the damage he experienced which was proximately caused by the
defendant.

Jury Instructions at 29.  The Court went on:

> Mr. Singletary has the burden of proof on the two issues that you
> will be asked to decide.  That means that you may find in his favor only
> if you find, by a preponderance of the evidence, that he was harmed as a
> proximate result of having his parole revoked without due process.  In
> addition, if you find that Mr. Singletary was harmed as a proximate
> result of having his parole revoked without due process, the amount of
> that you find he is entitled to as compensation must also be supported by
> a preponderance of the evidence.

> If you find that plaintiff did not prove any damages, then you
> may award nominal damages in the amount of $1.

*Id.* at 30.  Finally, the verdict form expressly asked:

> 1)     Has Charles Singletary proved by the preponderance of the
> evidence that he was harmed as a proximate result of the revocation of his
> parole in 1996 by the District of Columbia Board of Parole?

Verdict Form [Dkt. # 69].  The jurors were instructed to check "yes" or "no" and to go on to the

question of the amount that would "reasonably and fairly compensate Charles Singletary for the

harm that he suffered" only if the answer to Question 1 was yes.  *Id.*

So, the defendant's complaint that the jury was improperly denied an opportunity to

return a nominal damages verdict does not warrant a new trial.

### III.     The Court properly excluded evidence concerning the facts underlying plaintiff's previous periods of incarceration.

Prior to the trial, the District advanced the theory that the fact that Singletary had served

time in prison before was relevant to the question of whether he suffered emotional harm when

he was wrongly incarcerated after the flawed parole hearing.  Def.'s Opp. to Pl.'s Mot. In Limine

at 2–6.  While the Court considered the relevance to be somewhat marginal, it permitted the

defendant to introduce some of this evidence in light of the broad definition of relevance set forth

in the Federal Rules of Evidence.  Thus, the evidence was admitted, and the jury was instructed

that the Court had taken judicial notice of the following facts:

> In addition to the ten years that Mr. Singletary was incarcerated from 1996
> to 2006, which is the subject of this trial, he also was incarcerated during
> the following time periods:
>
> -    4/21/1982–4/26/1982
> -    1983–1990
> -    5/6/1993–5/7/1993
> -    6/10/1993–8/26/1993
> -    8/9/1994–3/7/1995
> -    8/16/1995–10/31/1995

Jury Instructions at 16.

The District claims now, though, that it is entitled to a new trial because the Court did not

permit it to introduce evidence concerning the alleged conduct that led to Singletary's

incarceration on those occasions, including the occasions that arose simply from arrests and not

convictions.  The motion will be denied for the reasons set forth in the ruling on the motion in

limine, *see* Mem. Op. on Pl.'s Mot. In Limine at 3–4, and in section II above, since the District

has yet to articulate how those matters could possibly have been relevant to the limited question

that was before the jury to decide, and much of the evidence it sought to introduce was barred by

the hearsay rules.  The District maintains:

> Had the District been afforded a full and fair opportunity to present
> its defense, the District would have contradicted Singletary's self-serving
> testimony by presenting substantive evidence regarding his previous
> experiences in prison, as well as evidence regarding his prior life
> experience involving physical brutality and harsh treatment he both
> witnessed and perpetrated . . . This evidence was directly relevant to
> Singletary's claim of injury because it would have assisted jurors in
> evaluating the alleged severity of that claimed harm.
>
> . . . [T]he jury should have been permitted to consider evidence of
> Singletary's violent criminal history in connection with his assertion that
> he suffered from exposure to violence while he was in prison.  As the
> District's evidence would have shown, any such alleged exposure to

> violence was not a new occurrence for Singletary, and he should not have
> been allowed to argue to the jury that it was, without benefit of the
> District's evidence.

Def.'s Mem. New Trial at 25–26.   But repeating this assertion does not make it so, and the

motion for new trial does not begin to justify the comprehensive assault on plaintiff's character

that the District sought to undertake.   Moreover, it does not specify anything that Singletary said

on direct examination that supposedly opened the door to this material; notably, there was no

claim by plaintiff that exposure to violence was a new experience for him.

Furthermore, as the Court noted in its ruling on the motion in limine:

> But even if the Court were to agree with the District's logic, it cannot find
> that mere arrests are sufficiently probative of the fact that the District is
> ostensibly trying to prove:  that physical brutality did not affect plaintiff
> very much because he committed acts of violence himself on other
> occasions.  In the absence of a conviction, those "facts" remain unproven,
> and the limited relevance of the information about plaintiff's arrests is far
> outweighed by the danger of unfair prejudice.  Furthermore, the District
> proposes to prove the supposedly relevant "fact" of plaintiff's prior acts of
> brutality with investigating officers who do not have direct personal
> knowledge and with inadmissible hearsay.  *See, e.g.*, Def.'s Exhibits 15,
> 29.

Mem. Op. on Pl.'s Mot. In Limine at 4.

Finally, even if the District is correct that "the jury should have been permitted to

consider whether Singletary, as someone who had previously been incarcerated, sustained the

level of pain and suffering arising from imprisonment that he claimed when compared, for

example, with a first time offender," Def.'s Mem. New Trial at 26, the jury *was* permitted to

consider that issue, so there would be no need for a new trial on that basis.

**IV.    Plaintiff was entitled to describe the conditions of his confinement, and the jury was properly instructed on how to consider that evidence.**

The District objects to the fact that plaintiff was permitted to testify about what he experienced for the ten years that he was wrongly incarcerated and how that made him feel, and it objects to the instructions that were given to the jury about what they could consider in determining the amount of damages.   Def.'s Mem. New Trial at 27.   Specifically, the Court instructed members of the jury:

> You have heard evidence in this case regarding Mr. Singletary's grievances and complaints made to personnel at Sussex II State Prison in Waverly, Virginia.  Mr. Singletary is not seeking damages on the grounds that Sussex personnel acted improperly or failed to act with regard to his eyesight.  You are not being asked to determine whether Mr. Singletary received proper care or treatment in connection with his incarceration. Instead, this evidence was admitted to provide a context for plaintiff's testimony regarding his day-to-day prison existence.

Jury Instructions at 32.  The Court also told the jury:

> If you determine that Mr. Singletary was harmed, you may award damages for any of the following items:
>
> -- Mr. Singletary's loss of liberty or freedom proximately resulting from the revocation of Mr. Singletary's parole.  This means, that you should determine the amount of money that would fairly and reasonably compensate him for the actual fact of his incarceration.  This includes a consideration of the length, and of the severity of that incarceration.
>
> -- Any physical suffering or discomfort that Mr. Singletary may have experienced as a proximate result of having his parole revoked without due process, with the exception that, as I have explained, the District is not liable or legally responsible for plaintiff's loss of his eyesight or for the medical impact of the nature or the timing of the care he received. What I mean by that is, you cannot award damages because you say to yourselves, "gee, he said when he went into prison in 1996, he could see, but that when he came out in 2006, he couldn't, so maybe being incarcerated affected his eyesight," or even, "being incarcerated and having medical staff who didn't treat him properly or treat him soon enough affected his eyesight."  That is not a part of this case, and it must not be a part of your damages calculation.  So the physical suffering factor does not include the fact that he became less able to see.  But if

16

you find that the plaintiff has shown by a preponderance of the evidence that some aspect of his incarceration proximately caused physical discomfort, including discomfort in his eyes, that is something that you may consider.

-- Any mental or emotional distress, suffering, or anguish that Mr. Singletary may have experienced as a proximate result of having his parole revoked without due process.  That emotional distress may include any negative impact Mr. Singletary may have experienced in his relationship with his family members that you find occurred as a proximate result of Mr. Singletary's parole being revoked.  And while, again, the District is not liable for any changes in Mr. Singletary's sight, you may include in your calculation any mental anguish or emotional distress that he experienced in the process of seeking medical attention for his vision issues if you find that he experienced it as a proximate result of his parole being revoked.

-- Any loss of enjoyment of life that Mr. Singletary experienced as a proximate result of having his parole revoked without due process.

Now, you have heard testimony that guards or staff members at some of the facilities were not District of Columbia employees or that the facilities were not owned or managed by the District.  But I have instructed you that the District is liable for the harm Mr. Singletary suffered as a proximate result of having his parole revoked.  So you should consider the fact and the experience of his incarceration for the entire ten year period, and the effect that the experience may have had on Mr. Singletary at any of the places he was sent to serve that incarceration, no matter where the prison was located or who worked there.

There is no claim in this case for damages for any events that took place prior to the revocation of parole in 1996 or after Mr. Singletary's release in 2006.

*Id.* at 33–34.

The Court also stated:

You have heard evidence that plaintiff was convicted in 1984 and that he served his sentence from 1983 to 1990.  That is the only conviction in this case.

You also heard evidence that plaintiff was incarcerated on other dates that were listed in the judicial notice.

You are instructed that the dates of incarceration before 1996 do not stem from any action of the D.C. Parole Board, and the plaintiff does not seek damages for any period of incarceration prior to 1996.

You are further instructed that the evidence that plaintiff spent other dates in jail has been admitted for one purpose only and that is, for your consideration in connection with your evaluation of the effect on Mr. Singletary of his incarceration from 1996 to 2006.  You may consider this evidence for that purpose and for no other purpose.

\*\*\*

The burden of proof is upon the plaintiff to establish all elements of his damages by a preponderance of the evidence.  The plaintiff must prove his damages with reasonable certainty.  You may only award the plaintiff damages for harm that is not speculative.  Speculative damages are those that might be possible but are remote or based on guesswork.

The plaintiff does not have to prove his exact damages, however. You may award the plaintiff damages that are based on a just and reasonable estimate derived from relevant evidence.

\*\*\*

You must base your decision, not on sympathy or speculation, but on the evidence you have heard.  However, Mr. Singletary's testimony, standing alone, may support a finding of intangible harm such as emotional distress or loss of liberty.   It was not necessary for Mr. Singletary to present evidence of the monetary value of intangible things such as emotional distress and loss of liberty.

Any amount that you award must be fair compensation, no more and no less.  In determining the amount of Mr. Singletary's compensation, you should be guided by common sense.  You must use sound judgment in reaching your verdict, drawing reasonable inferences from the facts in evidence.

The mere fact that I have given you instructions on damages does not in any way imply or suggest that I believe damages should be awarded in this case or the amount in which damages should be awarded.  Those questions are for you alone to decide.

*Id.* at 35–37.

The District maintains that the testimony was improperly admitted because the plaintiff

did not file an Eighth Amendment claim.  Def.'s Mem. New Trial at 10–13.  That is correct, but

18

that does not mean that what took place during those ten years could not be presented as part of the damages case on the section 1983 claim.  The jury was specifically instructed that the District was not liable for plaintiff's loss of his eyesight or for the medical impact of the nature or the timing of the care that he received, so there was no risk that the District would be held responsible for something that was not properly part of the case.

The damages instruction listed the factors the jury could consider if it determined that plaintiff had been harmed by his wrongful incarceration, and the case law plaintiff supplied in support of the proposed instruction permitted the consideration of those factors.  *See* Am. Joint Pretrial Statement at 43–44, citing *e.g., Kerman v. City of New York*, 374 F.3d 93, 125–126 (2d Cir. 2004) (loss of liberty or freedom); *Barnes v. District of Columbia*, 452 A.2d 1198, 1199–1200 (D.C. 1982) (physical suffering or discomfort); *Daskalea v. District of Columbia*, 227 F.3d 433, 443–444 (D.C. Cir. 2000) (mental or emotional distress, suffering, or anguish); *Taylor v. Washington Terminal Co.*, 409 F.2d 145, 149 (D.C. Cir. 1969) (loss of enjoyment of life).  The Court specifically gave the District additional time to provide a response to plaintiff's proposed instruction on damages and the cases that plaintiff had cited in support of it.  But the District did not take advantage of this opportunity.  Instead, it simply advanced the *Carey v. Piphus* argument concerning causation and nominal damages and directed the Court to its Non-Standard Jury Instruction No. 2 on compensatory damages.  Def.'s Supp. Proposed Special Jury Instructions [Dkt. # 61] at 2.  But the cases in support of that instruction addressed completely different factual circumstances.  *Id.*, citing *Flores v. O'Donnell*, 36 Fed. App'x 204, 206–07 (7th Cir. 2002); *Yarn v. Thomas*, 25 Fed. App'x 173, 173 (4th Cir. 2002); *Burke v. North Dakota Dep't of Correction and Rehab.*, 620 F. Supp. 2d 1035, 1062–63 (D.N.D. 2009).  The motion for a new trial on these grounds will therefore be denied.

**V.    Defendant is not entitled to a new trial because the Court indicated – during *voir dire* and in preliminary instructions only – that plaintiff had been arrested in 1995 as "an accomplice" to a murder.**

The District complains that it was unfairly prejudiced because when the Court first described the case to the jury pool, it stated that while he was on parole, Singletary had been arrested as an "accomplice" in a murder.  Def.'s Mem. New Trial at 5–10.  The Court notes at the outset that the word "accomplice" was used in the D.C. Circuit's opinion in the *Singletary* case.  *See Singletary v. Reilly,* 452 F.3d at 870.  It also finds that defendant was not prejudiced by the use of the word.

"Accomplice" is defined as "[a] person who helps another commit a crime; a partner in wrongdoing."          *See*          Oxford          English          Dictionary, http://www.oed.com/view/Entry/1152?redirectedFrom=accomplice#eid (last visited July 16, 2011).  It is not disputed that Carmelita Metts was directly involved in organizing the Houtman murder, and that even according to her account, she had two people helping her, so the terminology is certainly apt.  *See Singletary v. Reilly,* 452 F.3d at 870.  Indeed, Metts was convicted of conspiring to commit the murder, and the Court submits that there would be very little difference between an individual's status as her "accomplice" and her "co-conspirator."  *Id.* at 873.

A second problem with the District's contention is that the motion for new trial does not point to any final jury instructions that were supposedly infirm – it simply quotes the Court's comments during *voir dire* and the preliminary instructions, which were delivered with this admonition:

> Members of the Jury:  Now that you have been sworn, I will give you
> some preliminary instructions to guide you about how this trial will work,
> and about some of the legal rules that are important in a trial.  These
> remarks are not a substitute for the instructions I will give you at the end

of the trial just before you start your deliberations.  They are simply
preliminary instructions that are intended to give you a sense for what will
be going on in the courtroom, and what your responsibilities as jurors will
be.

Most important, even if one assumes that the use of the word "accomplice" was inaccurate and

prejudicial, these early comments to the jury did not infect the trial since ultimately, the fact of

plaintiff's arrest for "murder" was admitted in evidence, and that fact was repeated as part of the

Court's final instructions.

During the plaintiff's case in chief, the Court took judicial notice of the following

matters:

[A Court] may take judicial notice of public facts and events which it
regards as matters of common knowledge or which are reflected in public
records such as court documents.  In this case, I have taken judicial notice
of certain facts, and those facts are now evidence in the case.  When I take
judicial notice of a particular fact, you may regard that fact as included in
the evidence and proven.  You are now instructed that I have taken judicial
notice of the following facts:

1.      In January 1984, plaintiff Charles Singletary was convicted of
kidnapping while armed and assault with a dangerous weapon in the
District of Columbia, and he was sentenced to a term of imprisonment of
9 -27 years.

2.      In 1990, Mr. Singletary was released from prison on parole.

3.      In 1995, Mr. Singletary was arrested and charged with murder, but
the charges were dropped at the preliminary hearing.  He was never
indicted or prosecuted.

So, the evidence in the case, as opposed to mere prefatory comments made during *voir dire*,

included the very fact that the District complains was omitted.

Furthermore, when the jurors were instructed at the close of the trial, they were

told:

When I take judicial notice of a particular fact, you shall accept that fact as
included in the evidence and proven.  In this case, I have taken judicial

> notice of the following facts: . . . In 1995, Mr. Singletary was arrested and
> charged with murder, but the charges were dropped at the preliminary
> hearing.

Jury Instructions at 15.  In light of all of these circumstances, the Court finds that the jury was

properly instructed and that mere use of the word "accomplice" at the start of the proceedings

does not warrant a new trial.[5]

## VI.    The evidence concerning a traffic offense in Virginia was properly excluded.

The District contends that the Court erred in ruling that the District could not impeach

plaintiff's testimony with his D.C. Department of Motor Vehicles driving record.  Def.'s Mem.

New Trial at 20–23.  On direct, plaintiff testified about the deterioration of his vision while he

was incarcerated, and he testified that the only time he got behind the wheel of a car after he was

released was on June 22, 2010, when he promptly got into an accident a short distance from

where he started.  On cross-examination, the District asked plaintiff if he had received a speeding

ticket on September 18, 2009, in Virginia, which plaintiff denied.  The District then asked

plaintiff if points were assessed against his license because of the ticket, and plaintiff responded:

"I don't believe that was me."

The District then sought to introduce in evidence plaintiff's D.C. driving record, which

recites information about a Virginia infraction.  It now complains that the exclusion of that

---

5       The District also complains that during *voir dire*, the Court "confirm[ed] Plaintiff's
blindness" to a juror who ultimately ended up serving on the panel.  Def.'s Mem. New Trial at 9.
But this does not warrant a new trial either.  The members of the venire were questioned
individually at the bench, and the juror involved initiated the conversation by asking the Court if
the plaintiff, who was wearing dark glasses in the courtroom, had problems with his vision.  He
was then questioned about whether his experience with a blind relative would affect his ability to
be fair in the case, and he specifically indicated that he understood that the trial would not be
about whether the District was responsible for the plaintiff's condition.  There was nothing about
the Court's answering his question that rendered the trial unfair; indeed, the juror's expression of
his concern gave the defense an opportunity it would not have had otherwise to explore any
potential bias on that ground.  Moreover, the District also did not object to the Court's statement
at the time it was made.

evidence was improper, and that it should have been able to point to the evidence to contradict plaintiff's testimony.  The District contends that "the exclusion of this admissible evidence was a clear abuse of discretion *and* was so clearly prejudicial to the outcome of the trial that the jury reached a seriously erroneous result and the verdict is a miscarriage of justice."  *Id*. at 23, citing *Luciano v. Olsten Corp.*, 110 F.3d 210, 217 (2d Cir. 1997).  It argues that the evidence should have been admissible because it addressed plaintiff's credibility, which was "central to this damages-only case" and "went to the very heart of the contested issue."  *Id.*

The problem with this argument is that the proffered exhibit related to an issue that was completely tangential to the matter that was before the jury to decide, and it did not illuminate that issue in any event.  So, there was no reason to permit the introduction of extrinsic evidence to undermine the plaintiff's testimony on this collateral point.  Apparently, the District wanted the jury to know that plaintiff had in fact driven a car on another occasion after he was released from prison and that his testimony on that matter was not truthful.  Presumably, the point of that evidence was to support an argument that plaintiff's sight was less impaired when he was released from jail than his direct testimony would have indicated.

But that point was not relevant.  The jury was told over and over that plaintiff was not seeking compensation for any diminution of his vision, and that it was not permitted to award damages on that basis.  So, the Court found that the document was not relevant under Federal Rule of Evidence 401 because it did not have any tendency to make the existence of any fact that was "of consequence in determining the action" more or less probable than it would be without the evidence.  Even if the evidence was relevant, it was also properly excluded in the Court's discretion under Federal Rule of Evidence 403 for "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, [and] needlessly presenting cumulative

evidence." Fed. R. Evid. 403.  The defendant was also permitted to introduce eyewitness testimony from police officers who had observed plaintiff in a barber shop cutting hair without difficulty after his release, which was proffered to establish plaintiff's ability to see on those occasions.

More important, the fact that the DMV in the District could produce a record that reflected the issuance of a speeding ticket in Virginia did not clearly contradict the plaintiff's testimony.  As the Court noted at trial, in the age of traffic cameras, the fact that a citation appears on plaintiff's driving record does not necessarily establish that it was the plaintiff who was driving the car when the violation occurred.  It merely indicates that someone driving the car registered to plaintiff received a ticket, and that the ticket was not contested.  In other words, that document did not reliably establish that plaintiff was driving the car in Virginia on the day the ticket was issued.  Also, the proffered witness, an employee from the D.C. Department of Motor Vehicles, was not competent to provide any details about what happened in Virginia.  He was simply able to authenticate a D.C. record that included matters communicated to it by the Virginia DMV.  The District has not explained how this hearsay within the record would be covered by any exception to the hearsay rule.  Fed. R. Evid. 803; Fed. R. Evid. 805.

The District also advanced an argument that the exclusion of plaintiff's driving record was an error because it would have impeached plaintiff's testimony that he had "20/20" vision before he was incarcerated.  Def.'s Mem. New Trial at 21.  But whether Singletary was required to wear eyeglasses when driving before his parole was revoked does not bear on the question of what plaintiff experienced when he was incarcerated after his parole was revoked.

Finally, even if the Court incorrectly excluded this irrelevant and unreliable evidence, it was an inconsequential error that does not warrant a new trial.  Therefore, the District's motion will be denied on these grounds as well.

## CONCLUSION

For all of the reasons set forth above, the District of Columbia's motion for a new trial or, in the alternative, for remittitur is denied.

AMY BERMAN JACKSON
United States District Judge

DATE:  July 17, 2012